Robert Zᴇʟʟɴᴇʀ, Plaintiff-Appellant,

v.

Cᴇᴅᴀʀʙᴜʀɢ Sᴄʜᴏᴏʟ Dɪsᴛʀɪᴄᴛ and Daryl Herrick,
Defendants-Respondents,

Mɪʟᴡᴀᴜᴋᴇᴇ Jᴏᴜʀɴᴀʟ Sᴇɴᴛɪɴᴇʟ and Katharine
Goodloe, Intervenors-Respondents.

Supreme Court

*No. 2006AP1143–AC. Oral argument March 6, 2007.
—Decided May 15, 2007.*

2007 WI 53

(Also reported in 731 N.W.2d 240.)

For the plaintiff-appellant there were briefs by *Jina L. Jonen* and *the Wisconsin Education Association Council,* Madison, and oral argument by *Jina L. Jonen.*

For the intervenors-respondents there were briefs by *Robert J. Dreps, Jennifer L. Peterson,* and *LaFollette Godfrey & Kahn,* Madison, and oral argument by *Jennifer L. Peterson.*

An amicus curiae brief was filed by *Eric Barber* and *Heller Ehrman LLP,* Madison, and *Loren A. Cochran,* and *Lucy A. Dalglish,* Arlington, VA, on behalf of The Reporters Committee for Freedom of the Press.

An amicus curiae brief was filed by *Lester A. Pines, Jordan C. Loeb,* and *Cullen Weston Pines & Bach LLP,* Madison, on behalf of the Wisconsin Professional Police Association, Inc.

An amicus curiae brief was filed by *Bruce F. Ehlke* and *Hawks Quindel Ehlke & Perry, S.C.,* Madison, on behalf of AFSCME District Council 40.

¶ 1. N. PATRICK CROOKS, J. This appeal is before the court on certification from the court of appeals, pursuant to Wis. Stat. § 809.61 (2005–06).[1] Robert Zellner (Zellner), a high school science teacher, appeals from the decision of the Ozaukee County Circuit Court, Judge Paul V. Malloy presiding. The circuit court denied Zellner's request for an injunction prohibiting the Cedarburg School District (District) from releasing a memorandum (memo) and a compact disc (CD) containing adult images and internet searches that Zellner allegedly viewed and conducted on his school computer. The circuit court ordered release of the memo and the CD and dismissed the action, but stayed the release of the memo and the CD pending appeal. The Milwaukee Journal Sentinel and one of its reporters, Katharine Goodloe (collectively Journal), had requested access to the memo and CD pursuant to Wisconsin's Open Records Law, Wis. Stat. §§ 19.31–19.39, after a public hearing resulting in Zellner's termination by the Cedarburg School Board (District Board), and after a grievance had been filed challenging that termination.

¶ 2. Zellner appealed the circuit court's dismissal and release order, and the court of appeals certified the case to this court, presenting several questions, including whether a public employee who views copyrighted

---

[1] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

images on a work computer has standing to raise the copyright exception to Wisconsin's Open Records Law, and if so, what is the scope of such exception?[2] The court of appeals also certified the issue of whether, under Wis. Stat. § 19.36(10)(b), the holding of *Local 2489, AFSCME v. Rock County,* 2004 WI App 210, 277 Wis. 2d 208, 689 N.W.2d 644, applies to records generated through further investigation after disposition, when discipline had been imposed and then a grievance procedure had been initiated on behalf of Zellner. Zellner raises the additional issue of whether the public's interest in protecting a citizen's privacy interests outweighs the public's interest in release of the CD and memo.

¶ 3. We hold that a person aggrieved by a request made under the Open Records Law has standing to raise a challenge that the requested materials are not "records" because they are copyrighted. We further hold that the language of the statute, when viewed in light of the "fair use" exception to copyright infringement, applies so that the CD and the memo are "records" within the statutory definition of Wis. Stat. § 19.32(2).[3]

¶ 4. Additionally, we hold that the CD and the memo do not fall within the statutory exception for pending disciplinary records "prior to disposition of the

---

[2] This issue could also be stated as follows: Does Zellner have standing to assert that the materials should not be released because they are not "records" under the statutory definition in Wis. Stat. § 19.32(2)?

[3] Wisconsin Stat. § 19.32(2) defines a "record" as

any material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, regardless of physical form or characteristics, which has been created or is being kept by an authority. . . . "Record" does not include . . . materials to which access is limited by copyright, patent, or bequest. . . .

investigation" under Wis. Stat. § 19.36(10)(b) and *Rock County,* 277 Wis. 2d 208, ¶¶ 19–20. We are satisfied that the District's investigation of Zellner's conduct was concluded for purposes of the Open Records Law when the District Board terminated Zellner's employment and that, therefore, the CD and the memo are not exempt from disclosure.

¶ 5. Finally, although we recognize the importance of protecting privacy and reputation interests, applying the common-law balancing test articulated by this court in *Linzmeyer v. Forcey,* 2002 WI 84, ¶ 12, 254 Wis. 2d 306, 646 N.W.2d 811, we hold that the presumption of complete public access, based on a public policy determination that records should usually be open for review, outweighs the public's interest in protecting the privacy and reputation interests of a citizen such as Zellner in this case.

¶ 6. The decision of the circuit court is, therefore, affirmed.

I

¶ 7. Zellner was employed by the District as a science teacher for nearly 11 years. On January 17, 2006, following a public evidentiary hearing, the District Board terminated Zellner for allegedly viewing images from adult websites on his work computer. No students were present at the time the images allegedly were viewed. The Journal and the Ozaukee News Graphic made a request for all exhibits presented at the hearing. Zellner did not oppose the release of the records.

¶ 8. On February 20, 2006, Zellner and District representatives met privately to discuss settlement. At that meeting, the District's attorney presented Zellner

296

with the memo, which was dated February 20, 2006, and had been prepared by the District's attorney. The memo was addressed to the District Board. The District's attorney also presented Zellner with a CD containing copyrighted digital images, which Zellner had allegedly viewed over the internet from his work computer. The memo contained a summary of Google search terms and website addresses that resulted in the adult images contained on the CD. Both the CD and the memo were created as a result of a forensic analysis of Zellner's work computer that was conducted by the District after the evidentiary hearing resulting in Zellner's termination. It is significant to note that Zellner's computer was purchased new, and that it was assigned exclusively to Zellner throughout its use.

¶ 9. The Cedarburg Education Association (Association) met with the District Board on February 21, 2006, in a closed meeting, to discuss its grievance on behalf of Zellner, regarding his termination. On February 22, 2006, the Journal sent a letter to the District seeking release of the memo and the CD under the Open Records Law. The District notified Zellner that it had decided to release the requested records.

¶ 10. Zellner filed an action in the Ozaukee County Circuit Court, seeking de novo review of the District's decision to release the memo and the CD. Zellner argued that, under Wis. Stat. § 19.36(10)(b), the requested items should not be released, because they were not "records" subject to release under the Open Records Law, since they were part of a current "investigation." Zellner further argued that the CD and the memo contained inaccurate and unauthenticated data that would be prejudicial to Zellner's reputation and his privacy interests. The Journal was permitted to intervene in the case.

297

¶ 11. After holding a hearing, the Ozaukee County Circuit Court, Judge Paul V. Malloy presiding, denied Zellner's request for an injunction prohibiting release, ordered release of the memo and the CD, and dismissed the action, but stayed the release pending appeal.

¶ 12. Zellner appealed the circuit court's decision in regard to release of the memo and the CD. The court of appeals granted a motion filed by the Journal to expedite the appeal pursuant to Wis. Stat. § 19.356(8). The court of appeals then certified the case to this court, and we accepted the certification.

¶ 13. While the appeal regarding the release of the memo and CD was pending, an arbitrator issued a decision in the arbitration between the District Board and the Association. The arbitrator determined that the District Board violated its collective bargaining agreement with the Association by terminating Zellner without just cause, and thus, ordered that Zellner be reinstated. Since the District Board did not comply with the arbitration award, the Association brought an action to enforce the arbitration award. Ozaukee County Circuit Court Judge Joseph D. McCormack did not confirm the arbitrator's decision, concluding that the District Board's decision was not arbitrary, and that there was a rational basis for terminating Zellner's employment for viewing pornography.

II

¶ 14. This case requires us to determine whether a public employee who views copyrighted images on a work computer has standing to raise the copyright exception to Wisconsin's Open Records Law. The determination of standing involves a question of law, which

we review de novo. *State v. Wisumierski,* 106 Wis. 2d 722, 733, 317 N.W.2d 484 (1982);[4] *Zehetner v. Chrysler Financial Co., LLC,* 2004 WI App 80, ¶ 12, 272 Wis. 2d 628, 679 N.W.2d 919.

¶ 15. This case also requires us to determine whether the CD and memo at issue are records under Wis. Stat. § 19.32, in light of the statutory exception relating to copyright in § 19.32(2). In addition, we must determine whether the "fair use" exception to copyright infringement in 17 U.S.C. § 107 applies. Fair use is a mixed question of law and fact. *Harper & Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 560 (1985). Therefore, if the lower court has made factual findings sufficient to evaluate the fair use factors, an appellate court need not remand for further fact-finding. *Id.*

¶ 16. We must also determine whether the investigation limitation in Wis. Stat. § 19.36(10)(b) applies in this case. These questions involve statutory interpretation and, therefore, are subject to de novo review. *State ex rel. Kalal v. Circuit Court,* 2004 WI 58, ¶¶ 44–51, 271 Wis. 2d 633, 681 N.W.2d 110. Under the plain meaning rule of statutory interpretation, extrinsic sources need not be and are not consulted except to resolve an ambiguity in the statutory language. *Id.*

¶ 17. The application of the Open Records Law to undisputed facts is a question of law that this court

---

[4] In *State v. Wisumierski,* 106 Wis. 2d 722, 732, 317 N.W.2d 484 (1982), this court held that the defendant lacked standing to challenge a search because he did not have a legitimate expectation of privacy. Although *Wisumierski* is a criminal case, we find it helpful in determining the proper standard of review for the issue of standing.

reviews de novo. *Hempel v. City of Baraboo,* 2005 WI 120, ¶ 21, 284 Wis. 2d 162, 699 N.W.2d 551. This case requires us to analyze the common-law balancing test set forth in *Linzmeyer,* 254 Wis. 2d 306, ¶ 12, to undisputed facts. More specifically, whether the public's interest in protecting Zellner's privacy and reputation interests outweighs the presumption of complete public access, based on the public policy determinations of the legislature, is a question of law which we decide without deference to the circuit court's decision. *Id.,* ¶ 24, *Kailin v. Rainwater,* 226 Wis. 2d 134, 146, 593 N.W.2d 865 (Ct. App. 1999).

## III

¶ 18. A threshold issue in this case is whether Zellner has standing to assert the copyright exception to the Open Records Law, Wis. Stat. § 19.32(2). The CD[5] at issue, which the District created after a forensic analysis of Zellner's computer, contains copyrighted adult images and websites.

¶ 19. The Journal argues that the copyright exception was intended to protect the rights of authors, not to shield the misconduct of public employees.[6] The Journal asserts that the District, not Zellner, would be

---

[5] Although Zellner argued in his brief to the circuit court that the memo is not a public record, he does not raise that argument before this court. Instead, he argues that, even if the memo is a public record, it should not be released because the public's interest in protecting the privacy and reputation rights of its citizens outweighs the public's interest in disclosure. The Journal argues that neither the CD, nor the memo, fall within the copyright exception, and that, therefore, both are records covered by the Open Records Law.

[6] In their amicus brief in support of the intervenors-respondents, the Reporters Committee for Freedom of the

liable for any copyright infringement, and thus, Zellner should not be permitted to assert copyright infringement as a bar to disclosure of the memo and CD.

¶ 20. Zellner argues that, as a public employee who will be affected by the release of the copyrighted materials, he has standing to object to their release. He relies on *Mutual Services Casualty Ins. Co. v. Koenigs,* 110 Wis. 2d 522, 329 N.W.2d 157 (1983), in support of his argument. In *Mutual Services,* the parents of a child injured in an automobile accident, and their automobile insurer, were parties aggrieved by a judgment dismissing the parents' homeowners' insurer, Prudential Insurance Company (Prudential), from the action. *Id.* The judgment dismissing Prudential meant that the parents could not be indemnified by Prudential under their homeowners' liability insurance policy, to the extent they were not protected by their automobile liability insurer. This court held that the parents and their automobile insurer had standing to appeal the circuit court's dismissal, even though they had never asserted a claim against the homeowner's insurer, because they were aggrieved by the judgment entered in the action, in that their interests were adversely affected. *Id.* at 527.

¶ 21. We agree with Zellner that he has standing, in accord with *Mutual Services,* to raise the copyright exception to the Open Records Law, as a basis for his objection to the release of the CD. Although *Mutual*

Press, American Society of Newspaper Editors, the Associated Press, the E.W. Scripps Company, Gannett Co., the Newspaper Association of America, the Newspaper Guild-CWA, and the Radio-Television News Directors Association, also argue that Zellner does not have standing to raise the copyright exception to the Open Records Law.

*Services* involved the issue of standing to appeal, whereas the present case involves the issue of standing to challenge the release of copyrighted materials under the Open Records Law in his appeal of the circuit court's decision, *Mutual Services* is helpful in our analysis. Zellner will be impacted personally by this court's holding in regard to the requested release, and his interests were adversely affected by the circuit court decision. He has standing, therefore, to raise the copyright exception as part of his appeal in this case.

¶ 22. Zellner asserts that the CD is not a record under Wis. Stat., chapter 19, because it contains websites and images that are protected by United States copyright law. Zellner argues that the materials and images from the CD may not be reproduced, copied, published, or distributed without the copyright holder's express permission. 17 U.S.C. § 106(1) (2006).[7] He asserts that, since the District does not own the copyright to the images and websites contained in the CD, the District may not distribute the images to the public without infringing the copyright holder's distribution rights.

¶ 23. The Journal argues that the CD and the memo are records, and that the copyright exception in Wis. Stat. § 19.32(2) does not apply. The Journal states that, in order to interpret the phrase "materials to which access is limited by copyright" in § 19.32(2), the court must look to federal copyright law. The Journal asserts that, although federal copyright law protects "original works of authorship fixed in any tangible medium of expression," 17 U.S.C. § 102(a), § 19.32(2) applies only when access to records would constitute

[7] All subsequent references to the United States Code are to the 2006 version unless otherwise indicated.

copyright infringement in violation of the exclusive rights of the copyright holder.

¶ 24. The Journal argues that Zellner's interpretation of what constitutes a record under Wis. Stat. § 19.32(2) is too broad. The Journal argues that, if the court were to adopt Zellner's interpretation of § 19.32(2), nearly every open records request in Wisconsin would be denied because the materials requested under the Open Records Law are almost always original works of authorship set forth in a "tangible medium of expression," such as a writing. According to the Journal, such a reading would render meaningless the presumption of complete public access stated in Wis. Stat. § 19.31.

¶ 25. The Journal also argues that allowing public access to the CD and the memo constitutes a "fair use of a copyrighted work" under 17 U.S.C. § 107 and, therefore, does not violate copyright law. *BMG Music v. Gonzalez*, 430 F.3d 888, 889 (7th Cir. 2005)("A 'fair use' of copyrighted material is not infringement."). *See also State ex rel. Rea v. Ohio Dep't of Educ.*, 692 N.E.2d 596, 601–02 (Ohio 1998). The Journal argues that the fair use doctrine applies to the CD and memo in this case, because there is no other way for the public to access the information contained therein, because the copyrighted work (the images and websites) is not commercial in nature, because the images were already published and freely distributed to the public, and because the CD and memo will in no way supplant the market. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577–78 (1994).

■

¶ 26. We are satisfied that, despite the copyright exception, the CD and the memo are records under Wis. Stat. § 19.32(2). Statutory interpretation begins with

the language of the statute; if the meaning is plain, the inquiry ordinarily ends. *Teschendorf v. State Farm Ins. Cos.*, 2006 WI 89, ¶ 12, 293 Wis. 2d 123, 717 N.W.2d 258. Section 19.32(2) broadly defines a record as "any material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, regardless of physical form or characteristics, which has been created or is being kept by an authority." The definition of a record "does not include . . . materials to which access is limited by copyright, patent, or bequest. . . ." We are satisfied that the phrase "limited by copyright" is not, itself, ambiguous; however, we must determine whether the copyright exception applies based on the facts presented in this case. It is helpful in that regard to look to federal copyright law.

¶ 27. Under federal law, "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression, now known or later developed. . . ." 17 U.S.C. § 102(a). "Works of authorship" include literary works; musical works, including any accompanying words; dramatic works, including any accompanying music; pantomimes and choreographic works; pictorial, graphic, and sculptural works; motion pictures and other audiovisual works; sound recordings; and architectural works. *Id.* Ordinarily, use and reproduction of copyrighted material is one of many rights granted only to the copyright holder. 17 U.S.C. § 106.

¶ 28. However, federal law recognizes a "fair use" exception to copyright infringement. In 17 U.S.C. § 107 four factors are listed that shall be considered in determining whether the use made of a copyrighted work in any particular case is a "fair use." Those factors include: (1) the purpose and character of the use,

304

including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for, or value of, the copyrighted work. 17 U.S.C. § 107.

¶ 29. Applying the "fair use" factors outlined in 17 U.S.C. § 107 in this case, we are satisfied that the CD and the memo do not fall within the copyright exception under Wis. Stat. § 19.32(2). While we look at all four factors listed in 17 U.S.C. § 107, the following factors are most significant in this case: the nature of the copyrighted work, and the effect of the use upon the potential market for, or value of, the copyrighted work. Under the circumstances presented in this case, the images and websites listed and recorded in the memo and the CD are not commercial in nature, because they can be accessed free of charge via the internet, and because the District will not profit from the distribution of the images. Additionally, allowing public access to the CD and the memo for purposes of adhering to the Open Records Law will not affect the potential marketability of the images, nor is it likely to relate to their value.

¶ 30. As we noted previously, fair use is a mixed question of law and fact. *Harper & Row, Publishers, Inc.*, 471 U.S. at 560. If the lower court has made factual findings sufficient to evaluate the fair use factors, an appellate court need not remand for further fact-finding. In the present case, the circuit court heard arguments concerning "fair use" and the copyright exception to the Open Records Law. The circuit court held that the CD and memo were public records and should be released. Although the circuit court did not

explicitly state that the records fell under the "fair use" exception, such a finding was implicit in the court's conclusion that the CD and memo were public records, and, therefore, not subject to the copyright exception. There is no need under such circumstances to remand for any further fact-finding.

¶ 31. Additionally, this court stated in *Fox v. Bock,* 149 Wis. 2d 403, 411, 428 N.W.2d 589 (1989), that statutory exceptions "should be recognized for what they are, instances in derogation of the general legislative intent, and should, therefore, be narrowly construed. . . ." *See also Hempel,* 284 Wis. 2d 162, ¶ 29. Wisconsin Stat. § 19.31 expressly states, in relevant part, the legislative intent behind Wisconsin's Open Records Law: "[Sections] 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access. . . . The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied." This presumption of complete public access is consistent with our conclusion that the copyright exception does not apply to the CD and the memo in this case, because public access to those records constitutes a "fair use" of the copyrighted images contained in the CD and discussed in the memo and, therefore, access is not "limited by copyright." Wis. Stat. § 19.32(2).

¶ 32. The court of appeals certified the additional question of whether Wis. Stat. § 19.36(10)(b)[8] excludes the memo and the CD from disclosure under the Open Records Law, where the records were generated

---

[8] Wisconsin Stat. § 19.36(10)(b) states that an authority shall not provide public access to records containing "[i]nformation relating to the current investigation of a possible criminal offense or possible misconduct connected with employment by an employee prior to disposition of the investigation."

through further investigation after a grievance procedure had been initiated on behalf of Zellner. Zellner argues that the circuit court misinterpreted § 19.36(10)(b) and *Rock County,* 277 Wis. 2d 208, when it ordered the release of Zellner's records before arbitration had been completed. Zellner asserts that § 19.36(10)(b) precludes the disclosure of employee records before the employer has concluded its investigation. Zellner asserts that, after his employment was terminated, the District continued its investigation of him, in preparation for the arbitration hearing based on the grievance filed.[9] He argues that the memo and CD are part of a pending investigation relating to "possible misconduct connected with employment[,]" and that the records, therefore, should not be released until that investigation has arrived at a final disposition. Wis. Stat. § 19.36(10)(b).

¶ 33. Zellner recognizes that, in *Rock County,* the court of appeals held that "investigation" under Wis. Stat. § 19.36(10)(b) included only records collected by the employer as a prelude to possible employee disciplinary action. *Rock County,* 277 Wis. 2d 208, ¶ 15. However, Zellner asserts that if an employer collected additional information to defend the disciplinary action, as was the case here, then public access must be prohibited. *See Id.,* ¶ 20.

¶ 34. In *Rock County,* 277 Wis. 2d 208, ¶ 5, employees of the Rock County Sheriff's Department were disciplined for viewing inappropriate internet images

---

[9] The Wisconsin Council of County and Municipal Employees and the Wisconsin Professional Police Association, Inc., amici curiae, also take the position that "investigation" under Wis. Stat. § 19.36(10)(b) contemplates the entire grievance resolution process, and not just the initial investigation conducted by an employer.

on their work computers. The employees and their union filed a grievance pursuant to their collective bargaining agreement with the county. The Janesville Gazette sent an open records request to the sheriff's department seeking reports generated in the sheriff's investigation of the employees. The union opposed release of the reports, arguing that, although the sheriff's own investigation of the employees' conduct had concluded, the grievance proceeding was ongoing. *Id.,* ¶ 9. The union argued that there had not yet been a "disposition of the investigation" of the employees. *Id.;* Wis. Stat. § 19.36(10)(b). The court of appeals rejected the union's argument, interpreting "investigation" in § 19.36(10)(b) to mean the investigation conducted by the public employer, the sheriff's department. *Rock County,* 277 Wis. 2d 208, ¶ 12. The court of appeals further concluded that the sheriff's department's investigation of its employees had reached "disposition" within the meaning of § 19.36(10)(b), when the sheriff's department took action to impose discipline on the employees as a result of the investigation. *Id.,* ¶ 15. The court of appeals held that, because the union did not establish any genuine public interest in nondisclosure of the records which would override the public interest in their disclosure, the records should be released. *Id.,* ¶¶ 31–32.

¶ 35. Zellner argues that the District collected additional information on Zellner in preparation for its defense of its disciplinary action, which resulted in his termination. *Id.,* ¶ 15. In *Rock County,* the court of appeals stated, "If, in preparing for defense of his disciplinary actions, the [employer] collects additional information or generates additional records, public access to these new items might arguably be prohibited under the exception in question or another one." *Id.,*

¶ 20. Zellner relies on this language to support his argument that Wis. Stat. § 19.36(10)(b) should apply to preclude the CD and the memo from release.

¶ 36. The Journal asserts that, according to *Rock County,* 277 Wis. 2d 208, ¶ 15, the records are not precluded from disclosure under Wis. Stat. § 19.36(10)(b), because the CD and memo were created after the imposition of discipline on Zellner. The Journal argues that Zellner's termination on January 17, 2006, effectively "disposed of" the investigation. The Journal argues that, at the time it made its open records request for the memo and CD on February 22, 2006, the District was no longer investigating Zellner.

¶ 37. The Journal asserts that, in *Rock County,* 277 Wis. 2d 208, ¶ 14, the court of appeals reasoned that the term "investigation" in Wis. Stat. § 19.36(10)(b) does not include an employee's subsequent challenge or grievance. The court of appeals stated:

> Reading Wis. Stat. § 19.36(10)(b) to preclude the release of records until any grievance arbitration or other review proceedings initiated by the employee have run their course would permit the employee to create prolonged delays in the release of the requested records. ... [T]he "investigation" and "disposition of the investigation" cannot reasonably be read to extend to the progress and completion of grievance arbitration. ...

*Id.,* ¶ 14 (citation omitted).

¶ 38. We hold that, consistent with the decision in *Rock County,* the investigation of Zellner was "disposed of" when he was terminated and that, therefore, the CD and the memo were not exempt from disclosure under Wis. Stat. § 19.36(10)(b). As noted previously, in *Rock*

*County,* 277 Wis. 2d 208, ¶ 15, the court of appeals held that that "the term 'investigation' in 19.36(10)(b) includes only that conducted by the public authority itself as a prelude to possible employee disciplinary action."

¶ 39. The memo and the CD that the District's attorney presented to Zellner at the meeting held on February 20, 2006, to discuss settlement of the grievance, were not records "connected with employment by an employee prior to disposition of the investigation[,]" and thus may be disclosed without violating Wis. Stat. § 19.36(10)(b).

¶ 40. Zellner further argues that his due process rights were violated because, as an employee subject to discharge, he was entitled to timely and adequate notice of the reasons for his discharge, an impartial decision-maker, and the opportunity to confront and cross-examine witnesses. *See Milwaukee Dist. Council 48 v. Milwaukee County,* 2001 WI 65, ¶ 51, 244 Wis. 2d 333, 627 N.W.2d 866. He asserts that the District created the requested records, after the evidentiary hearing where the District Board voted to terminate his employment. Zellner argues that, because the requested records were not presented at the evidentiary hearing prior to his termination, he did not have an opportunity to examine the records or question witnesses about them.

¶ 41. The Journal argues that Zellner, by not raising due process in the circuit court, waived the issue. In support of its argument, the Journal cites *Jensen v. School District of Rhinelander,* 2002 WI App 78, 251 Wis. 2d 676, 642 N.W.2d 638, in which the court of appeals rejected a school superintendent's argument that his due process rights were violated because he did not have an opportunity to examine his performance evaluation before his employer decided to disclose the evaluation to the public. Additionally, the Journal as-

serts that Zellner did have an opportunity, at the deposition of the District's computer expert, to conduct an examination regarding the origin and the compilation of the information in the CD and the memo.

¶ 42. Regarding Zellner's claim of violation of his due process rights, it is important to consider this court's holding in *Milwaukee Teachers' Education Association v. Milwaukee Board of School Directors,* 227 Wis. 2d 779, 787, 596 N.W.2d 403 (1999). There, we held that a public employee, such as a teacher, whose privacy or reputation interests would be impacted by disclosure of information requested under the Open Records Law has a right to a de novo judicial review of the custodian's decision to disclose the information.[10] In this case, Zellner was entitled to, and received, such a de novo review of the District's decision to release the CD and the memo to the Journal. As we have discussed, the District's decision to release the records was reviewed by the Ozaukee County Circuit Court, and that decision was appealed to the court of appeals, and is now being reviewed here on certification. As the Journal points out, Zellner deposed the District's computer expert and, at that deposition, had the opportunity to question him regarding where the images and websites contained in the CD and the memo originated and how they were compiled. We are satisfied, under the circumstances, that Zellner's due process rights were not violated,

---

[10] Justice William A. Bablitch, in his concurrence, stated, "Although the majority does not raise the issue to a constitutional dimension, I believe the lack of fundamental fairness raises due process issues." *Milwaukee Teachers' Ed. Ass'n v. Milwaukee Bd. of Sch. Dirs.,* 227 Wis. 2d 779, 800, 596 N.W.2d 403 (1999)(Bablitch, J., concurring).

because of the review of the custodian's decision in the circuit court, as well as the deposition of the computer expert.

¶ 43. Zellner argues that, even if the CD and memo are records under Wis. Stat. § 19.32(2), disclosure should still be barred since, under Wisconsin's common-law balancing test, the public interest in protecting the privacy and reputation rights of its citizens outweighs the public interest in disclosing the requested materials. *Woznicki v. Erikson,* 202 Wis. 2d 178, 192–93, 549 N.W.2d 699 (1996). Zellner argues that this court has held that significant consideration should be given to the privacy and reputation rights of Wisconsin citizens. He points out that, in *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 685, 137 N.W.2d 470, 476 (1965), this court recognized the significant legislative policy of "not disclosing data which may unduly damage reputations carries over to the field of inspection of public records and documents."

¶ 44. Zellner argues that this court should consider the "extent of harm to individual reputations by release of certain records. . . ." *Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 432, 279 N.W.2d 179 (1979). He asserts that the requested records contain inflammatory information, that will harm his reputation and privacy if released. According to Zellner, this harm, when weighed against the small amount of public value that release of the CD and memo would offer, tips the balance against allowing the public to access them. *See Morke v. Record Custodian, Dep't of Health & Soc. Servs.,* 159 Wis. 2d 722, 725–726, 465 N.W. 2d 235 (1990). Zellner claims that, in this case, the public would derive little value from the CD and the memo because it already has more than sufficient information to evaluate Zellner and the District.

¶ 45. Zellner further argues that the requested records should not be disclosed because they are inaccurate and misleading. *Linzmeyer,* 254 Wis. 2d 306, ¶ 38. Zellner asserts that since the CD and memo contain pornographic images and website addresses and that, if disclosure is allowed under the Open Records Law, the District could be forced to distribute such pornographic materials in response to open records requests.

¶ 46. The Journal argues that the public's interest in oversight of government employees outweighs any personal embarrassment that Zellner might suffer upon release of the CD and memo. The Journal asserts that only in exceptional cases may the "presumption of complete public access" under Wis. Stat. § 19.31 be overcome by an even stronger public policy in favor of limited access or nondisclosure. *Hempel,* 284 Wis. 2d 162, ¶ 28. The Journal maintains that this is not an exceptional case, where access to the records should be denied. The Journal argues that the public has a significant interest in being informed of how Zellner, a public school teacher, conducted himself on the job, and how he utilized his work computer, which belonged to the District. The Journal argues that the public also has an interest in being informed of how the District handled the investigation and discipline of Zellner.

¶ 47. Zellner also asserts that, under Wis. Stat. § 19.85(1)(b), public bodies may be convened in closed session, in order to consider "dismissal, demotion, licensing or discipline of any public employee or person licensed by a board or commission or the investigation of charges against such person. . . ." According to Zellner, the meeting between Zellner and the District Board was a closed session for purposes of discussing settlement. He argues that allowing the public to have access

to materials presented at that meeting would have a chilling effect on the ability of parties to settle labor disputes. Zellner argues that closed sessions allow parties to engage in candid discussion without concern that what is discussed will be disclosed. *See N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 150–52 (1975).

¶ 48. The Journal argues that, although the settlement meeting between Zellner and the District was closed to the public, it does not follow that records which were compiled in conjunction with that meeting are automatically exempt from release under the Open Records Law. *See Wis. State Journal v. Univ. of Wisconsin-Platteville,* 160 Wis. 2d 31, 38, 465 N.W.2d 266 (Ct. App. 1990). The Journal argues that the circuit court was correct in concluding that Wis. Stat. § 904.085(3) does not apply in this case. Section 904.085(3) exempts from public disclosure under the Open Records Law any "oral or written communication relating to a dispute in mediation made or presented in mediation by the mediator or a party. . . ." The Journal asserts that the explicit legislative purpose behind the statute is "to encourage the candor and cooperation of disputing parties, to the end that disputes may be quickly, fairly and voluntarily settled." Wis. Stat. § 904.085(1). The Journal argues that the CD and memo were not created for the purpose of mediation and that, therefore, § 904.085(3) is inapplicable, and we agree.

¶ 49. We are satisfied that the strong public policy, evidenced by the presumption of complete public access that records should be open for review, outweighs the public's interest in protecting Zellner's privacy and reputation interests here, in regard to the release of the CD and memo. Wisconsin Stat. § 19.31 states in rel-

evant part, "[I]t is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them." This statement of public policy in § 19.31 is one of the strongest declarations of policy to be found in the Wisconsin statutes. *Munroe v. Braatz,* 201 Wis. 2d 442, 549 N.W.2d 451 (Ct. App. 1996).

¶ 50. We recognize, however, that the public policy in favor of openness, although strong, is not absolute. This court has also held that the public interest in the protection of the reputation and privacy of citizens may be a factor that favors nonrelease. *Woznicki,* 202 Wis. 2d at 187. In *Linzmeyer,* 254 Wis. 2d 306, ¶ 31, we stated, "This public interest is *not* equivalent to an individual's personal interest in protecting his or her own character and reputation." (Emphasis in original.) We must weigh any public interest stopping release against the strong public policy that public records should be open for review. *Id.* As we stated in *Linzmeyer,* "[T]he public interest in protecting individuals' privacy and reputation arises from the public effects of the failure to honor the individual's privacy interests, and not the individual's concern about embarrassment." *Id.*

¶ 51. *Linzmeyer* concerned a report created by the Neenah Police Department as a result of its investigation of a high school mathematics teacher, who allegedly had made inappropriate statements to female students. We held that there was no public policy concern in that case that outweighed the presumption of complete access, and thus openness, under the Open Records Law. *Id.,* ¶ 42.

¶ 52. In this case, the CD and the memo contain internet searches, websites, and images allegedly conducted and viewed by Zellner on his work computer. Release of the CD and the memo could cause embarrassment to Zellner and could damage his reputation. We recognize the sensitive nature of the information contained in the memo and CD. However, in applying the common-law balancing test, the concern is not personal embarrassment and damage to reputation, but whether disclosure would affect any public interest. Zellner fails to show how his personal interest in protecting his own privacy, character, and reputation, and his interest in avoiding embarrassment, would give rise to a public interest in the protection of the privacy and reputation of citizens generally. *Id.,* ¶ 36. He has also failed to establish that the CD and memo contain inaccurate, misleading, and unauthenticated data and, accordingly, that they should not be released. Even if Zellner could establish that the CD and memo contain such data, he has an avenue of recourse available to him to address such concerns. *See Jensen,* 251 Wis. 2d 676, ¶ 16. For example, Zellner has a statutory right under Wis. Stat. 103.13(4)[11] to file a response when the evaluation is released. *Id.*

---

[11] Wisconsin Stat. 103.13(4) states:

(4) Personnel record correction. If the employee disagrees with any information contained in the personnel records, a removal or correction of that information may be mutually agreed upon by the employer and the employee. If an agreement cannot be reached, the employee may submit a written statement explaining the employee's position. The employer shall attach the employee's statement to the disputed portion of the personnel record. The employee's statement shall be included whenever that disputed portion of the personnel record is released to a 3rd party as long as the disputed record is a part of the file.

¶ 53. On the other hand, the public has a significant interest in favor of releasing the memo and the CD. Public school teachers like Zellner are in a significant position of responsibility and visibility. *See Id.,* ¶ 28. They are entrusted with the responsibility of teaching children, and the public has an interest in knowing about such allegations of teacher misconduct and how they are handled. The public also has an interest in knowing how the government handles disciplinary actions of public employees. As we stated in *Linzmeyer,* 254 Wis. 2d 306, ¶ 28, " 'All officers and employees of government are, ultimately, responsible to the citizens, and those citizens have a right to hold their employees accountable for the job they do.' " (Citation omitted.)

¶ 54. Regarding Zellner's argument that the meeting on February 20, 2006, between himself and the District was a "closed meeting" under Wis. Stat. § 19.85(1)(b), and that any records created for the purpose of that meeting should not be disclosed, we look to the language of the statute itself for guidance. Wisconsin Stat. §§ 19.85(1) and (1)(b) state that a "closed session may be held" for the purpose of "[c]onsidering dismissal, demotion, licensing or discipline of any public employee. . . ." However, Wis. Stat. § 19.35 states in relevant part:

> The exemptions to the requirement of a governmental body to meet in open session under § 19.85 are indicative of public policy, but *may* be used as grounds for denying public access to a record only if the authority or legal custodian under § 19.33 makes a specific dem-

---

We are satisfied that the term "personnel record" in § 103.13(4), under the circumstances presented in this case, is broad enough to allow Zellner to provide a written statement explaining his position.

onstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made.

(Emphasis added.) Generally, in construing statutes, the word "may" is construed as permissive. *Wauwatosa v. Milwaukee County*, 22 Wis. 2d 184, 191, 125 N.W.2d 386, 389 (1963). Section 19.35(1) does not mandate that, when a meeting is closed under § 19.85, all records created for or presented at the meeting are exempt from disclosure.[12] We must still apply the balancing test articulated in *Linzmeyer.*

¶ 55. In sum, we hold that the strong presumption of complete openness with regard to public records overrides any public policy against disclosure of the CD and the memo in this case. It is important to note, however, that the District need not, by itself, bear the financial burden of producing copies of the CD and the memo in response to open records requests. Under Wis. Stat. § 19.35(3), the District may impose a fee upon the Journal, or any others who request the records, for the reproduction of the records, but the fee may not exceed the actual, necessary, and direct cost of complying with the open records request. *Osborn v. Bd. of Regents*, 2002 WI 83, ¶ 46, 254 Wis. 2d 266, 647 N.W.2d 158.

IV

¶ 56. We hold that a person aggrieved by a request made under the Open Records Law has standing to

---

[12] Wisconsin Stat. § 19.35 also identifies other circumstances when a document may not be subject to release under the Open Records Law. *See* Wis. Stat. § 19.35(1)(am)1–2. However, none of those circumstances appears to be applicable in this case. As noted previously, the "investigation" of Zellner was concluded for purposes of the Open Records Law when the District Board terminated Zellner's employment.

raise a challenge that the requested materials are not "records" because they are copyrighted. We further hold that the language of the statute, when viewed in light of the "fair use" exception to copyright infringement, applies so that the CD and the memo are "records" within the statutory definition of Wis. Stat. § 19.32(2).

¶ 57. Additionally, we hold that the CD and the memo do not fall within the statutory exception for pending disciplinary records "prior to disposition of the investigation" under Wis. Stat. § 19.36(10)(b). We are satisfied that the District's investigation of Zellner's conduct was concluded for purposes of the Open Records Law when the District Board terminated Zellner's employment and that, therefore, the CD and the memo are not exempt from disclosure.

¶ 58. Finally, although we recognize the importance of protecting privacy and reputation interests, applying the common-law balancing test articulated by this court in *Linzmeyer,* 254 Wis. 2d 306, ¶ 12, we hold that the presumption of complete public access, based on a public policy determination that records should usually be open for review, outweighs the public's interest in protecting privacy and reputation interests of a citizen such as Zellner in this case.

*By the Court.*—The decision of the circuit court is affirmed.