State of Wisconsin, Plaintiff-Appellant,

v.

Shawn B. Ebersold, Defendant-Respondent.

Court of Appeals

*No. 2006AP833–CR. Submitted on briefs October 9, 2006.
—Decided October 25, 2007.*

2007 WI App 232

(Also reported in 742 N.W.2d 876.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Daniel J. O'Brien*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Lester A. Pines* and *Kira Loehr* of *Cullen Weston Pines & Bach LLP*, Madison.

Before Higginbotham, P.J., Dykman and Lundsten, JJ.

¶ 1. HIGGINBOTHAM, P.J. The State appeals an order dismissing an amended complaint that alleged Shawn B. Ebersold, a high school teacher, verbally communicated a harmful description or narrative account to a child, contrary to Wis. Stat. § 948.11(2)(am) (2005–06),[1] by sending sexually explicit messages to one of his students in an Internet chat room. The circuit court dismissed the complaint on grounds that the chat messages were not "verbal communications" prohibited by § 948.11(2)(am). The State contends that the written messages sent by Ebersold are within the scope of communications prohibited by § 948.11(2)(am). We agree,[2] and therefore reverse and remand for further proceedings.

## Background

¶ 2. The pertinent facts are not in dispute. The State charged Ebersold with one count of verbally communicating a harmful description or narrative ac-

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[2] Because we base our conclusion on grounds that Wis. Stat. § 948.11(2)(am) applies to written communication, we need not address the State's alternate argument that real-time electronic means of communication such as Internet chat, text messaging and instant messaging are so similar in nature to spoken communication that they should be considered within the scope of conduct prohibited by the statute.

count to a child in violation of Wis. Stat. § 948.11(2)(am). An amended criminal complaint alleges that sometime in early 2004, Ebersold, a teacher at Pioneer Westfield High School, sent sexually explicit messages to one of his students, J.J.S., in an Internet chat room. J.J.S. was sixteen or seventeen years old at the time. The amended complaint alleges that Ebersold described to J.J.S. in the Internet chat his favorite sexual acts and his desire to have sex with her and another female at the same time.

¶ 3. Ebersold moved to dismiss the charges, arguing that the complaint did not allege a violation of Wis. Stat. § 948.11(2)(am) because he did not "verbally communicate" with J.J.S. by sending chat messages to her online. The circuit court granted the motion to dismiss, concluding that § 948.11(2)(am) prohibited only oral descriptions or narrative accounts of a harmful nature, and that Ebersold's Internet chat messages to J.J.S. were written descriptions outside the scope of the statute. The State appeals.

### Standard of Review and Principles of Statutory Interpretation

■

¶ 4. This case requires us to determine the scope of conduct prohibited by Wis. Stat. § 948.11(2)(am). Such a determination involves statutory interpretation, an issue of law that we review de novo. *See Zellner v. Cedarburg School Dist.*, 2007 WI 53, ¶ 16, 300 Wis. 2d 290, 731 N.W.2d 240.

■

¶ 5. The purpose of statutory interpretation is to give full effect to the policy choices of the legislature. *See State ex rel. Kalal v. Circuit Court*, 2004 WI 58,

¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. To that end, we start by examining the language of the statute to ascertain its plain meaning. *See id.*, ¶¶ 44–45. We give words and phrases their common, ordinary, and accepted meaning, except that technical or specially-defined or technical words and phrases are given their technical or special definitional meaning. *Id.*, ¶ 45. "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. We read statutes in a manner that gives reasonable effect to every word, in order to avoid surplusage. *Id.*

¶ 6. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." *Id.* (citation omitted). A statute is ambiguous only if reasonably well-informed persons could interpret its meaning in two or more senses. *Id.*, ¶ 47. When the statutory language is ambiguous, we may consult extrinsic sources of interpretation, such as legislative history. *See id.*, ¶ 48.

*Discussion*

¶ 7. The pertinent statutes are set forth below. WISCONSIN STAT. § 948.11(2)(am) provides as follows:

> Any person who has attained the age of 17 and who, with knowledge of the character and content of the description or narrative account, verbally communicates, by any means, a harmful description or narrative account to a child, with or without monetary consideration, is guilty of a Class I felony if any of the following applies:

1. The person knows or reasonably should know that the child has not attained the age of 18 years.

2. The person has face-to-face contact with the child before or during the communication.

For purposes of the statute, "[h]armful description or narrative account" means "any explicit and detailed description or narrative account of sexual excitement, sexually explicit conduct, sadomasochistic abuse, physical torture or brutality that, taken as a whole, is harmful to children." Section 948.11(1)(ag).

¶ 8. WISCONSIN STAT. § 948.11(2)(a) prohibits the knowing distribution of "harmful material" to a child. "Harmful material" is defined within the section as:

1. Any picture, photograph, drawing, sculpture, motion picture film or similar visual representation or image of a person or portion of the human body that depicts nudity, sexually explicit conduct, sadomasochistic abuse, physical torture or brutality and that is harmful to children; or

2. Any book, pamphlet, magazine, printed matter however reproduced or recording that contains any matter enumerated in subd. 1., or explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexually explicit conduct, sadomasochistic abuse, physical torture or brutality and that, taken as a whole, is harmful to children.

Section 948.11(1)(ar).

¶ 9. In this case, the parties dispute whether WIS. STAT. § 948.11(2)(am) prohibits communication of a harmful description or narrative account to a child via an Internet chat message. Whether such a message is within the scope of conduct prohibited by the statute depends largely on the meaning of the word "verbally,"

within the phrase "verbally communicates, by any means." Because "verbally" is not defined within the statute, we consult recognized dictionaries to ascertain common and accepted meanings of the term. *See State v. Kendell G.*, 2001 WI App 95, ¶ 9, 243 Wis. 2d 67, 625 N.W.2d 918.

¶ 10. BLACK'S LAW DICTIONARY, 1591 (Bryan A. Gardner ed., 8th ed. 2004), defines verbal as follows: "**1.** Of, relating to, or expressed in words. **2.** Loosely, of, relating to, or expressed in spoken words." WEBSTER'S SECOND NEW COLLEGE DICTIONARY, 1225 (1999), contains the following entry for "verbal":

> **1.** Of, relating to, or associated with words *<verbal orders>* **2. a.** Concerned with words instead of with the facts or ideas they represent. **b.** Using or made up of words alone without action *<a verbal showdown>* **3.** Expressed or transmitted in speech: UNWRITTEN *<a verbal agreement>* **4.** Word for word: LITERAL *<a verbal translation>* **5. a.** Relating to, having the nature or function of, or derived from a verb. **b.** Used to form verbs *<a verbal suffix>* **6.** Of or pertaining to competence in the use and comprehension of words *<verbal skills>*

¶ 11. Ebersold contends that the circuit court correctly determined that "verbally communicates" unambiguously means "orally communicates," prohibiting spoken descriptions or narrative accounts that are harmful to children, but not written ones. He argues that the common and accepted modern usage of the term "verbal" refers to spoken communication, and that the definition of "verbal" that refers to words more broadly "is so obscure and so far removed from common parlance that only lexicographers or etymologists would be aware that the statute sought to criminalize written as well as spoken communications." He further argues

that if the legislature had intended to criminalize all harmful descriptions to children, whether spoken or written, the statute would simply read "communicates," not "verbally communicates." He cites numerous other statutes that use the word "verbal" to mean "oral," *see, e.g.* WIS. STAT. § 48.243(3) (intake worker evaluating whether a child should be referred to the court for a CHIPS proceeding must provide "notice . . . given verbally, either in person or by telephone, and in writing" of the basic rights provided under the statutory section); WIS. STAT. § 943.30(1) (prohibiting extortion by means of accusing or maliciously threatening to accuse a person of a crime "either verbally or by any written or printed communication").

¶ 12. The State does not dispute that "verbal" may be used to refer to spoken communication only, although it asserts that this sense of "verbal" is disfavored in legal writing, and has gained acceptance only recently through misuse.[3] The State argues that "verbal" as it is used here has only one reasonable meaning, "of, relating to, or associated with words," WEBSTER'S SECOND NEW COLLEGE DICTIONARY at 1225, when the phrase "verbally communicates" is considered in context with the rest of the statute. The State notes that "verbally

_____

[3] The State cites two journal articles in support of this proposition, Lynn E. MacBeth, *Lessons in Legalese,* 4 No. 10 LAWYERS JOURNAL, May 17, 2002, at 6 ("Unfortunately, the word verbal has been so misused that, in certain industries, it has come to mean 'oral.' However, in standard English verbal means 'consisting of words' . . .") and Mary Barnard Ray, *Common Confusing Usage Rules,* WISCONSIN LAWYER, June 2000, at 50 ("*Oral* describes something spoken, in contrast to something written . . . . *Verbal* describes something expressed in words, which can be oral or written . . . . Now that you know how to use these terms accurately, you can practice in your next documents . . . .").

communicates" is followed with "by any means," indicating that the legislature intended the statute to apply broadly to spoken and written communication. It argues that the context of WIS. STAT. § 948.11(2) demonstrates that the legislature sought in paragraph (a) to target primarily the distribution of images and other visual representations, while paragraph (am) targets communication to minors of harmful spoken or written descriptions and narratives.

¶ 13. We conclude that the statute is facially ambiguous because the statutory language may be reasonably read to support either party's interpretation. With regard to Ebersold's interpretation of the statute, we acknowledge that "verbal" may be reasonably read in the present context to refer to oral communications only. While the use of "verbal" to mean "oral" is disfavored by some, *supra* n.3, the dictionaries cited above show that this sense of the term has become accepted. *See* BLACK'S LAW DICTIONARY at 1590 ("**2.** Loosely, of, relating to, or expressed in spoken words."); WEBSTER'S SECOND NEW COLLEGE DICTIONARY at 1225 ("**3.** Expressed or transmitted in speech: UNWRITTEN <a *verbal* agreement>"). We also agree with Ebersold that, given the multiple meanings of "verbal," the legislature could have more clearly prohibited both written and oral harmful descriptions and narrative accounts to children by simply omitting the term "verbally," providing instead: "Any person who . . . *communicates,* by any means, a harmful description or narrative account to a child . . . is guilty of a Class I felony."[4] (Emphasis added.)

---

[4] Ebersold's contention that the definition of verbal that means "associated with words" is "so obscure and far removed from common parlance that only lexicographers and etymologists would be aware" of this sense of the word is far less

¶ 14. However, we conclude that the State's interpretation is more reasonable than Ebersold's because it is consistent with the context, history and purpose of the statute. Paragraphs (a) and (am) of WIS. STAT. § 948.11(2), taken together, indicate that the legislature intended to proscribe exposure of a child to two different if somewhat overlapping categories of harmful matter, the former relating primarily to visual representations and the latter relating exclusively to representations using words. Paragraph (a) prohibits the sale, rental, exhibition, playing, or distribution to minors of "harmful material," which, as defined by § 948.11(1)(ar), includes visual representations (§ 948.11(1)(ar)1.) and any printed or recorded matter containing visual representations and/or verbal descriptions or narrative accounts (§ 948.11(1)(ar)2.). Paragraph (am) does not pertain to harmful images, prohibiting only "verbally communicate[d]" descriptions and narratives that are harmful to children. Thus, "verbally" is most reasonably read here as proscribing communication to children of harmful matter in words, whether oral or written, and to distinguish § 948.11(2)(am) from § 948.11(2)(a), which primarily proscribes visual representations.

¶ 15. Moreover, "verbal" is used elsewhere in the same section to mean "associated with words," whether in printed matter or a recording. The definition of "harmful material," WIS. STAT. § 948.11(1)(ar), states that "harmful material" includes "explicit and detailed verbal descriptions or narrative accounts" contained in printed or recorded matter. Section 948.11(1)(ar)2. The use of "verbal" in § 948.11(1)(ar)2. to mean "associated

persuasive—a bit of *verbal* calisthenics—given that this definition is listed first in the dictionaries cited herein, before the definition favored by Ebersold.

with words" supports an inference that the legislature intended to apply this same meaning of "verbal" in § 948.11(2)(am) as well. *See State ex rel. Gebarski v. Circuit Court*, 80 Wis. 2d 489, 495, 259 N.W.2d 531 (citing *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932) (natural presumption exists that a term used multiple times in a legislative act is intended to have the same meaning in each instance)).

¶ 16. As the State notes, WIS. STAT. § 948.11(2)(am) indicates that the communication may be "by any means," suggesting the legislature intended to ban all communications of harmful material or narratives to children, whether in oral or written form. The legislative history of § 948.11(2)(am) further supports this conclusion. The legislature added paragraph (am) by amending § 948.11(2) in 1997. Legislative Reference Bureau (LRB) Drafting File, 1997 Wis. Act 82. The bill containing the new provision included the following analysis of the LRB: "This bill prohibits a person from verbally communicating to a child an explicit and detailed description or narrative account of [material defined by the statute as harmful to children]. *The communication to the child may be done by any means.*" Drafting file, 1997 Wis. Act 82, 1997 A.B. 189 (emphasis added).

¶ 17. The supreme court has declared that the purpose of WIS. STAT. § 948.11 is twofold: "(1) to protect minors from material harmful to them as a class and (2) to protect the rights of parents to supervise the development of their children." *State v. Thiel*, 183 Wis. 2d 505, 524, 515 N.W.2d 847 (1994). A reading of § 948.11 that exempts from the ambit of the statute harmful descriptions or narratives that are communicated to a child in written form is inconsistent with

these two goals. Ebersold provides no reason why the legislature would exempt written descriptions harmful to children from § 948.11, while making the communication of harmful oral descriptions a Class I felony, and we can conceive of none.

¶ 18. Finally, Ebersold argues that adoption of the State's interpretation renders the statute unconstitutionally vague because the statute would fail to give fair notice that it prohibits written communication to children of harmful descriptions and narratives. We disagree. Ebersold's vagueness argument is premised on his prior contention, rejected above, that the definition of "verbal" meaning "associated with words" is arcane and known only to logophiles. Ebersold has failed to demonstrate beyond a reasonable doubt that the statute does not give persons of ordinary intelligence fair notice that it prohibits written communication to children of harmful descriptions or narratives. *See State v. Chvala*, 2004 WI App 53, ¶ 9, 271 Wis. 2d 115, 678 N.W.2d 880, *affirmed by an equally divided court*, 2005 WI 30, 279 Wis. 2d 216, 693 N.W.2d 747 (statutes are presumed constitutional and party challenging constitutionality must demonstrate statute's unconstitutionality beyond a reasonable doubt); *see also State v. Pittman*, 174 Wis. 2d 255, 276, 496 N.W.2d 74 (1993) (statute is unconstitutionally vague if "persons of ordinary intelligence do not have fair notice of the prohibition and those who enforce the laws and adjudicate guilt lack objective standards and may operate arbitrarily").[5]

---

[5] We note that Ebersold's chat message was directed at a particular child, his student. The instant case does not address whether Wis. Stat. § 948.11(2)(am) proscribes a person who has

*By the Court.*—Order reversed and cause remanded for further proceedings.

attained the age of seventeen from posting in a chat room or other electronic forum a written harmful description or narrative account that is not targeted at a particular minor. For example, it is not apparent to us how § 948.11(2)(am) would apply to a scenario where a defendant wrote a harmful description or narrative account such as a "dirty" story and distributed that story on the Internet to a broad audience rather than to a specific person the defendant knew or reasonably should have known was a minor. However, because the facts of this case plainly fall under the prohibitions of § 948.11(2)(am), we do not address that situation.