**2023 WI App 5**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2021AP2190

†Petition for Review filed

Complete Title of Case:

**MARK GIERL,**

**PETITIONER-RESPONDENT,**

**V.**

**MEQUON-THIENSVILLE SCHOOL DISTRICT,**

**RESPONDENT-APPELLANT.†**

| | |
|---|---|
| Opinion Filed: | December 7, 2022 |
| Submitted on Briefs: | September 15, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Gundrum, P.J., Neubauer and Grogan, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the respondent-appellant, the cause was submitted on the briefs of *Joel S. Aziere* and *Jennifer Williams* of *Buelow Vetter Buikema Olson & Vliet, LLC*, Waukesha. |
| Respondent ATTORNEYS: | On behalf of the petitioner-respondent, the cause was submitted on the brief of *Thomas C. Kamenick* of *Kamenick Law Office, LLC*, Port Washington. |

**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**December 7, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2190**

STATE OF WISCONSIN

Cir. Ct. No. **2020CV240**

IN COURT OF APPEALS

---

MARK GIERL,

    PETITIONER-RESPONDENT,

  V.

MEQUON-THIENSVILLE SCHOOL DISTRICT,

    RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Ozaukee County: STEVEN MICHAEL CAIN, Judge. *Affirmed.*

Before Gundrum, P.J., Neubauer and Grogan, JJ.

¶1 GUNDRUM, P.J. Mequon-Thiensville School District contends the circuit court erred in granting Mark Gierl's motion for summary judgment on his writ of mandamus and ordering the District to release a parent e-mail list to Gierl as he had requested. We conclude the court did not err.

## *Background*

¶2      Gierl's petition for a writ of mandamus states:

> On June 24, 2020, the District sent out an email inviting "parents and guardians in our school community to participate in a webinar this Friday on the topic of privilege and race." The email described the webinar, titled "The Talk: A Necessary Conversation on Privilege and Race with Our Children," as including topics such as the "transitional model of change," the "spectrum of racism," the "Phenomenon of the George Floyd case" and "interventions to help become a powerful ally."

Gierl subsequently requested from the District the list of e-mail addresses to which the invitation was sent. In response, the District sent Gierl a letter indicating the invitation was sent to "all parents and staff members" of the District. The District provided the list of all staff e-mail addresses to which the invitation was sent but refused to provide the list of parent e-mail addresses, stating, "[T]he District does not believe that there is a statute or case explicitly requiring or prohibiting disclosure of the list of parent email addresses, and as such, we have decided to respectfully decline your request for parent email addresses." Within the letter, the District also referred to a 2010 letter by an assistant attorney general indicating it was not unreasonable under the Wisconsin public records law balancing test for the District of South Milwaukee to deny a request for parent e-mail addresses on the district-stated basis that disclosing parent e-mail addresses would inhibit parent-school communication by discouraging parents from providing their e-mail addresses.[1]

---

[1] We also observe another notable part of the assistant attorney general's (AAG) letter that the District did not point out. In that part, the AAG noted that WIS. STAT. § 19.36(10) makes the home address, *home e-mail address*, home telephone number and social security number of certain *government employees* confidential and then states that "if the legislature [had] wanted to make the address, phone numbers, and *email address* of *parents of pupils* confidential, it could easily have done so[, but did not,] in Wis. Stat. § 118.125 or the public records law." (Emphasis added.)

¶3     Gierl filed this petition for writ of mandamus pursuant to the public records law, seeking the list of parent e-mail addresses to which the June 24, 2020 invitation was sent.  The parties filed cross-motions for summary judgment, and the circuit court granted summary judgment to Gierl.  The District now appeals.

## *Discussion*

¶4     The District contends the circuit court erred in granting Gierl summary judgment and ordering the District to release the parent e-mail addresses. We conclude the court did not err.

¶5     Our review of a circuit court's decision on summary judgment is de novo.  ***Behrendt v. Gulf Underwriters Ins. Co.***, 2009 WI 71, ¶11, 318 Wis. 2d 622, 768 N.W.2d 568.  Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  ***Id.***

¶6     In regard to Wisconsin's public records law, we have stated:

> When addressing an open records request, a records custodian must make the initial decisions on whether a requested item is a "record" and whether any statutory or common law exceptions to disclosure apply.  If the custodian determines that the item is a record and no exceptions apply, the custodian must then conduct a balancing test to "weigh the competing interests involved and determine whether permitting inspection would result in harm to the public interest which outweighs the legislative policy recognizing the public interest in allowing inspection."
>
> If the custodian's decision is challenged, however, a court must make its own independent decisions regarding these matters, including the balancing test.  "The duty of the custodian is to specify reasons for nondisclosure and the court's role is to decide whether the reasons asserted are sufficient."  If the custodian states no reason or insufficient reasons for refusing to disclose the information, the writ of mandamus compelling disclosure must issue.  A court

should apply the balancing test "when the record custodian has refused to produce the record, in order to evaluate the merits of the custodian's decision." Where … the relevant facts are undisputed, we review de novo a custodian's balancing decision of whether the public interest in nondisclosure of the challenged information outweighs the public interest in disclosure. It is the burden of the party seeking nondisclosure to show that "public interests favoring secrecy outweigh those favoring disclosure." *Access is only to be denied "in an exceptional case."*

*John K. MacIver Inst. for Pub. Pol'y, Inc. v. Erpenbach*, 2014 WI App 49, ¶¶13-14, 354 Wis. 2d 61, 848 N.W.2d 862 (emphasis added; citations omitted).

¶7 Furthermore, the legislature has written:

> [I]t is ... the public policy of this state that all persons are entitled to the *greatest possible information* regarding the affairs of government and the official acts of those officers and employees who represent them.... [P]roviding persons with such information is declared to be an essential function of a representative government .... To that end, [WIS. STAT. §§] 19.32 to 19.37 shall be construed in every instance with *a presumption of complete public access*, consistent with the conduct of governmental business. The *denial of public access generally is contrary to the public interest*, and *only in an exceptional case may access be denied.*

WIS. STAT. § 19.31 (2019-20)[2] (emphasis added). As our supreme court has noted, this statement "is one of the strongest declarations of policy to be found in the Wisconsin statutes." *See Zellner v. Cedarburg Sch. Dist.*, 2007 WI 53, ¶49, 300 Wis. 2d 290, 731 N.W.2d 240. Following this declaration, Wisconsin maintains a "strong presumption of complete openness with regard to public records." *Id.*, ¶55.

¶8 The District asserts that the parent e-mail addresses do not relate to the "affairs of government and the official acts of those officers and employees who

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

represent them." Like the circuit court, we disagree. The District, a government entity, uses government resources to collect e-mail addresses of District parents and then uses those e-mail addresses to promote and advance selected matters of interest to District personnel. As the circuit court noted:

> The record … shows that the district used th[is] distribution list between the period of July 1, 2018, and June 30 of 2020 for a multitude of communications. Much of it dealing with school and primarily student-focused communications such as school closures, bus routing, enrollment reminders, parent surveys. The types of things that you would expect a district would communicate with its parents.
>
> But the district also used th[is] list to engage in other communication that really may stray from what traditionally would be considered school related. And that includes inviting persons or parents to public events. In a particular note [o]n March 24th of 2020[,] the district sent emails from the school board president encouraging voting on its referendum that was upcoming. June 4th of 2020[,] the district emailed a statement from the superintendent and the board regarding the George Floyd incident that had occurred about a week prior, I believe.
>
> June 18th of 2020[,] the district used the list to comment on student social media posts that allegedly occurred outside of the school and not on school property. And that email spoke to the district's commitment to educating, quote, the community about issues of race inequity and then referred to the talk presentation that was upcoming. And that's the presentation invitation that is the subject of Mr. Gierl's record request.
>
> The district also uses its distribution list to send a newsletter called Momentum. And Momentum is, again, while primarily focused on school or district-related content, it does periodically include items that could be construed, and these are the Court's words, I would refer to it as community outreach. And that type of information clearly would be of interest to perhaps the broader Mequon-Thiensville community.
>
> And items that have been included in the Momentum magazine or newsletter in the past are updates or information regarding the district's legislative committee, which is a

committee that may lobby or seek to influence policy as it relates to school districts. It included items regarding a workshop to perhaps inform or encourage people to serve on its school board. It promoted its employee health clinic. And it provided information regarding workshops specific to long-range planning, facilities updates, and, again, the referendum that … based on the record must have occurred in spring of 2020.

The talk announcement email of June 24th, 2020, was specifically directed to, quote, members of the school community. It was inviting, quote, members of the school community to attend. And, again, in the Court's view, again, engaging in what I'll refer to as community outreach.

Again, ultimately the talk webinar occurred on June 26th of 2020. And the content, again, was generally on the topic of race inequity. And the record demonstrates that at the closing of that webinar that the superintendent of the district encouraged participants in the webinar to, quote, advocate at the community-wide level for change you see needed. Period. It can't just happen in the hallways of the school.

….

[T]he school district has made a determination through a superintendent or board that it wishes to engage in, again, what the Court is referring to as more of community outreach. And in some case[s] even advocating for particular social change or general[] advocacy. And it's used its distribution list as a means to do that.

In addition, it's promoted its legislative efforts through its email. Again, it's encouraged engagement on social issues outside of the district. It's encouraged or promoted its referendum efforts.… [W]hen it does that it has some implications on how the balancing test is applied. Especially when the record is silent on the issue of whether the disclosure of these emails will have an actual chilling effect on communications with the district.

….

> [I]f the district's trying to influence the public in any way, shape, or form, it's of the public interest to know who government is attempting to influence.[3]

¶9    While the District relies upon the fact that it has already informed Gierl who it was sending e-mails to, i.e., "District parents," that response only identifies the general body of persons; it does not identify the specific individual's e-mail contact information the District was using. Providing the actual e-mail addresses, as requested by Gierl, does this. Importantly, the e-mail list is the actual "record."

¶10    In refusing to release the parent e-mail addresses, the District, without on-point statutory or case law support, contends the balancing test favors keeping the list secret because releasing it would have a "chilling effect" on parents'

---

[3] Related to several of the matters specifically referred to by the circuit court, the record shows that in addition to the e-mailed invitation for "The Talk: A Necessary Conversation about Privilege and Race with Our Children," the e-mail list was used by the District for e-mails (1) encouraging the parent recipients to vote in an upcoming District building referendum while touting the "importan[ce]" of the referendum passing, such as referring to the referendum question as an "important item[] … that seeks to address high-priority challenges in our public schools related to growth and capacity" and telling e-mail recipients that "85 percent of [stakeholders participating in a recent community-wide survey] believe the District's facility needs should be addressed now"; (2) directed to "Staff, Parents, Guardians, and Members of Our Community" related to "[t]he death of George Floyd at the hands of police officers, one of many in our country's long history of injustice based on race" and referring to "the stark reality that there are still mountains to move and institutions to reshape to eliminate race-based inequities and eradicate racism in this country.… And that change can't happen until our whole society accepts that validity and the history behind it"; (3) asserting the District's "commitment to educating our community about racial equity and inclusion and the need to stamp out systemic racism"; and (4) touting District advocacy for "topics" and "proposed bills" in the legislature. Gierl further avers and the record evidence shows that in "The Talk," a slide was included with a note at the bottom that read: "'Blacks' can be substituted with people of any nationality/ethnicity other than European white since it's people of European dissent who have held institutional power in America since its inception" and that the superintendent closed "The Talk" with his own comments encouraging parents to "advocat[e] at the community-wide level for the change you see needed. It can't just happen in the hallways of the school." *See* Mequon-Thiensville School District, "The Talk: A Necessary Conversation about Privilege and Race with Our Children," https://vimeo.com/433754377 (last visited Oct. 6, 2022).

willingness to provide their e-mail addresses to the District and thus stifle District-parent communications. But, as the circuit court noted, "[W]hat's missing in the record is support for that position that a chilling effect will occur. In the Court's mind[,] it's largely speculation. Because the record here just does not suggest that the district has any support for that chilling effect argument." The court relatedly noted that the record shows that in 2015 the District released its then-current parent e-mail list to a third-party requestor, a former mayor for the City of Mequon, yet no chilling effect was observed following that release.[4]

> [A]fter the 2015 disclosure[,] there's no evidence that the school district received any comments from those persons that may have been receiving emails from whoever the former mayor disclosed the list to, whether it be library, or nature center, or anyone else for that matter. And the district wasn't able to demonstrate that anyone had even come to the district to suggest or request that their information should be withheld or not disclosed.
>
> So, again, the Court finds that it's largely speculation regarding the chilling effect of disclosure of the emails. There's no indication in the record that parents will stop communicating with the district. Certainly they won't. No indication that they'll shift away from email as a preferred method of communication. Might they use a different email address? Perhaps. And there's really no indication in the record that there wouldn't be any other way to communicate with parents in perhaps an old-fashioned method, mail or otherwise.

¶11     As our supreme court has stated, "[f]actual support for the custodian's reasoning is likely to strengthen the custodian's case before a circuit court."

---

[4] In its response to interrogatories, the District acknowledged that in October 2015 a list of parent e-mail addresses "was provided to [former Mequon Mayor,] Christine Nuernberg[,] … for use by the Mequon Nature Preserve and the Weyenberg Library." The District further admitted that since providing that list, the District was "unaware" of any parents informing the District "that all or any part of the directory data for their pupils may not be released without their prior consent" or of "any documents" identifying "communications from Parents expressing concern over sharing their email addresses with [the District], requesting that [the District] not share their email addresses, or requesting that their email addresses be taken off of [the District's] lists."

*Hempel v. City of Baraboo*, 2005 WI 120, ¶79, 284 Wis. 2d 162, 699 N.W.2d 551. We see the flip side of that statement play out here as the circuit court correctly noted that it was little more than speculation that parents would be unwilling in the future to provide e-mail addresses for District communication if those addresses were at risk of being released to third parties upon request. We agree with the circuit court that the speculative chilling effect is insufficient to "overcome the 'strong presumption of complete openness' with regard to the e-mails."[5] *See Erpenbach*, 354 Wis. 2d 61, ¶¶27-32 (citations omitted) (holding that e-mails, including e-mail addresses, of individuals who contacted lawmakers related to specific public policy concerns were public records that must be released despite custodian's contention that release would have a "chilling effect" on future communications from individuals).

¶12    The circuit court also referred to our supreme court's decision in *Hathaway v. Joint School District*, 116 Wis. 2d 388, 342 N.W.2d 682 (1984). In that case, the executive director of the Green Bay Education Association, Hathaway, requested that he be permitted to copy the Joint School District of Green Bay's computer-generated list "consist[ing] of the names and addresses of all parents who have one or more children in the Green Bay public school district, created by the School District for its use in mailing information to the parents of the school system's students." *Id.* at 390. The list was "maintained, used, and updated by the School District for the purpose of communicating directly with the parents of its

---

[5] The District does refer to a letter from one individual who apparently resides in the school district, which letter was submitted by the District for purposes of summary judgment consideration and was not something the custodian would have considered in denying release of the parent e-mail list. That single letter, however, does not help the District as even it fails to provide any evidence of a single parent indicating he or she actually would not provide an e-mail address to the District if the parent knew it might be released to a third party under the public records law. In light of the broad range of purposes for which the District uses the list, even if there had been multiple such letters in this case, that still would not have tipped the balancing test in favor of secrecy.

students regarding issues and concerns." *Id.* at 394. Hathaway "requested the list so that the Association could contact the children's parents in regard to its position on matters being discussed in the collective bargaining agreement" between it and the district. *Id.* at 390. Our supreme court concluded that the list of names and addresses was a public record the district was required to disclose. *Id.* at 404.

¶13    Comparing the parent information requested by the third party in *Hathaway* to that requested by Gierl in the case now before us, the circuit court here expressed that any unwanted e-mails resulting from release of the parent e-mail list "is far less [intrusive] than … someone perhaps calling you on your phone or even more so showing up on your doorstep," which could result from the release of parent phone numbers and home addresses that the *Hathaway* court ordered released under the public records law. The court here noted the District's expressed concern that release of the e-mail addresses could "lead to unwanted spam or invade the privacy of its parents," but referencing the assistant attorney general's 2010 letter suggesting release of parent e-mail addresses could chill District-parent communications, the court correctly observed:

> [I]t's not lost on the Court that it's 2021. [The assistant attorney general's] opinion was from 2010. Technology's come a long way. It's really a daily reality that persons receive unwanted email, spam, if you will. It's an inconvenience that's dealt with by most persons who use email with, you know, modern technology where you can simply delete, or flag, or unsubscribe, or otherwise block emails. That's just common with most email systems today.

¶14    The District also expresses concern that Gierl's purpose in requesting the e-mail addresses is to "SPAM [the parents] with his political ideology." Essentially, the District is concerned that Gierl disagrees with some issues or positions about which it has communicated with parents using the e-mail list, and it fears Gierl will utilize the list to identify and perhaps organize parents who might

share his views regarding the District's positions. In short, the District wants to be able to use government resources to collect and utilize these e-mail addresses to promote and advance the particular "community outreach" issues and positions of District (government) leaders while denying others in the community the opportunity to utilize the e-mail addresses to share differing viewpoints. Gierl states: "If the District had the discipline to limit itself to emails about bus schedules, enrollment, office closures and the like, the public interest in accessing this Distribution List would not be as high." We agree; the balancing test does not tolerate utilizing taxpayer resources for an ideological or political monopoly.

¶15    The circuit court did not err in applying the balancing test. The District has failed to meet its burden to demonstrate that the public interest in keeping the parent e-mail addresses secret—and preserving them solely for the District's broad use, unless perhaps an apparently more favorable third-party requester requests the list, as in 2015—outweighs the strong public policy in favor of releasing these public records.

*By the Court.*—Order affirmed.